IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BVR DEVELOPMENT, LLC, *et al.*, | * | |
| Plaintiffs, | * | |
| vs. | * | Civil Action No. ADC-18-2039 |
| CALATLANTIC GROUP, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendant/Counterclaim Plaintiff, CalAtlantic Group, Inc., moves this Court to dismiss the Complaint of Plaintiffs/Counterclaim Defendants, BVR Development, LLC, Roberts Real Estate Development, LLLP, Ravenhurst Village, LLC, Brian V. Roberts, and BVR Investments, LLC, for Declaratory Judgment (Counts I and II), Mandatory Injunction (Count III), and Breach of Contract (Count IV) (the "Motion to Dismiss") (ECF No. 31). After considering the Motion to Dismiss and the responses thereto (ECF Nos. 35, 39), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). For the reasons stated herein, the Court GRANTS Defendant's Motion to Dismiss.

### **FACTUAL BACKGROUND**

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). On January 14, 2013, Plaintiffs[1] and Defendant entered into an Agreement of Purchase and Sale in which

---

[1] Plaintiffs BVR Development, LLC, Roberts Real Estate Development, LLLP, Ravenhurst Village, LLC, and BVR Investments, LLC are affiliated entities of which Mr. Roberts is the sole member, shareholder, and principal. ECF No. 35 at 4.

1

Plaintiffs agreed to develop and sell eight real estate development projects to Defendant. ECF No. 32-1 at 2–3. Per the Agreement, Plaintiffs were required to provide a promissory note, deposit security mortgage, and personal guaranty executed by Mr. Roberts to Defendant, and Defendant was required to tender an earnest money deposit for the projects. *Id.* at 6. The deposit was allocated to each of the eight projects in varying amounts. *Id.* at 6–10. One of the real estate projects, named Villas of Dunloggin and also known as Tiber Woods, and the deposit amount for that project are the subject of this action. ECF No. 28 at 3, ¶ 13; ECF No. 31-1 at 3.

Several of the Agreement's provisions are implicated in this case. Section 3 of the Agreement provided that as the parties closed on each project, the deposit for that project would be applied to the purchase price and Defendant would pay the remaining balance to Plaintiffs. ECF No. 32-1 at 6–10. Additionally, at each individual closing, Defendant would release the promissory note, deposit security mortgage, and personal guaranty granted for that project. *Id.* Section 5 of the Agreement addressed closings and provided that closings on each project "shall take place within thirty (30) days after [Plaintiffs'] delivery of a written closing notice . . . to [Defendant] that all of the conditions precedent to Closing . . . have been satisfied." *Id.* at 12. Section 11 of the Agreement addressed default. *Id.* at 23. Pursuant to section 11(a), if Defendant was the defaulting party, the Agreement provided that Plaintiffs' remedy "shall be limited to the right to terminate this Agreement as to the Project on which [Defendant] has defaulted and to retain the then remaining portion of the Deposit applicable to the Project." *Id.* Pursuant to section 11(b), if Plaintiffs were the defaulting party, the Agreement entitled Defendant to proceed with the purchase of the project, terminate the Agreement with respect to the project related to the default, recover "any unpaid portion of the Total Assignment Price applicable to such Project" from

Plaintiffs, and seek any other remedies Defendant was entitled to at law or equity. *Id.* Section 11(c) related to cure and provided:

> Notwithstanding the provisions of Subsections 11(a) and (b) above, except for a failure to timely deliver any portion of the Deposit as and when due, or to timely Close hereunder, for which the cure period shall be ten (10) business days, no default by either Party shall result in a termination or limitation of any rights of such Party hereunder unless and until the other Party shall have notified the defaulting party in writing of said default, and the defaulting party shall have failed to cure said default within thirty (30) days after the receipt of said written notice.

*Id.*

In accordance with the Agreement, Defendant tendered an earnest money deposit in the amount of $887,500 to Plaintiffs for the Tiber Woods project. ECF No. 1-6 at 2–3. In return, Plaintiffs BVR Development, LLC, Roberts Real Estate Development, LLLP, Ravenhurst Village, LLC, and BVR Investments, LLC ("Seller Plaintiffs") provided Defendant with a Deposit Promissory Note executed on April 25, 2013. ECF No. 31-2. Pursuant to the note, Seller Plaintiffs consented to entry of a confessed judgment against them, making each jointly and severally liable if they defaulted on the Tiber Woods deposit. *Id.* at 3. On the same day, Mr. Roberts executed a Deposit Refund Guaranty in which he "unconditionally guarantee[d] to [Defendant] the refund . . . of the [Tiber Woods] Deposit" and consented to entry of a confessed judgment against him should the Seller Plaintiffs default on the obligation to return the deposit. ECF No. 31-3 at 2, 4–5.

On February 2, 2018, Plaintiffs sent Defendant a written closing notice for the Tiber Woods project via email. ECF No. 1-7. On February 21, 2018, counsel for Defendant responded to the notice, stating that it was "inaccurate and premature" and noting several deficiencies. ECF No. 31-4 at 2–3. On March 5, 2018, Plaintiffs provided Defendant with a second closing notice for the

Tiber Woods project via email. ECF No. 1-8. Per section 5(a) of the Agreement, the parties were then obligated to close by April 4, 2018. ECF No. 32-1 at 12.

On March 21, 2018, Plaintiffs sent Defendant a default notice via email, alleging eleven defaults by Defendant.[2] ECF No. 1-9 at 2. The notice warned that "all of the above constitutes an anticipatory breach of contract and therefore [Plaintiffs] a[re] within [their] rights to start to explore other buyers for the Tiber Woods project immediately." *Id.* The next day, Plaintiffs sent Defendant a second default notice alleging a single default—that Defendant "[u]nreasonably with[eld] approval of and delay[ed] the approval of the Water and Sewer Declaration for Tiber Woods." ECF No. 1-10 at 2. Because the alleged defaults were not related to failure to timely deliver any portion of the deposit or to timely close, Defendant had thirty days from the date of the notice to respond and cure the defaults per section 11(c) of the Agreement. ECF No. 32-1 at 23.

On March 29, 2018, Plaintiffs sent Defendant a document via email titled "Tiber Woods Termination Notice." ECF No. 31-5. The notice stated:

> This is a Termination Notice for the Tiber Woods project in Howard County[,] Maryland. The Deposit will not be returned. The Deposit Deed of Trust and Guarantee will be required to be released immediately. Any delay will incur further damages on my part. Consistent with my previous delivery of Notice, this Notice shall be

---

[2] In the default notice, Plaintiffs alleged that Defendant failed to: "follow the procedures outlined in the FFBC procedures memo"; "[pay] the bills at Tiber Woods for wetlands permit"; "release the Deposit Mortgage and Personal Guarantee simultaneously with the acquisition of properties"; "conduct meetings, half of which should be at [Mr. Roberts's] office"; "get Sellers['] consent prior to changing the lot sizes at Tiber [W]oods TWICE"; "comply with the Notice of Change of Address"; "have buyer of lot 11 at Willow Creek sign FFBC disclosure at Closing"; "timely apply for, pay for and diligently pursue permits necessary to develop Tiber Woods"; "approve revised Water and Sewer Declaration for Tiber Woods in a timely manner"; "provide information and documentation supporting the costs of the installation and construction of water and sewer systems"; and "provide Notice of transfer of ownership or assignment of rights from CalAtlantic to Lennar." ECF No. 1-9 at 2 (emphasis in original).

4

acceptable in email form and distribute it to all relevant parties by the recipients.

*Id.* at 2. On April 3, 2018, Plaintiffs sent Defendant a second termination notice, titled "Tiber Woods Termination Notice" and "Tiber Woods Default Notice," which stated:

> Please be advised you are in Default for failure to Close on the Tiber Woods project. You have been made aware of numerous times you failed to adhere to the Agreement and have been given ample opportunity to cure. This is a Second Default Notice and a Second Termination Notice for the Tiber Woods project in Howard County[,] Maryland. The Deposit Deed of Trust and Guarantee will be required to be released immediately. Failure to Release the Deposit Mortgage immediately will result in additional damages incurred. Consistent with my previous delivery of Notice, this Notice shall be acceptable in email form and distribute it to all relevant parties by the recipients.

ECF No. 1-11 at 2.

On April 13, 2018, Defendant notified Plaintiffs by letter that "[Plaintiff], through its March 22 Notice of Termination and March 29 2018 Termination Notice, anticipatorily breached the Agreement" and that "the Agreement is terminated." ECF No. 40-1 at 5. This letter also included a demand for the $887,500 Tiber Woods deposit along with accrued interest. *Id.* On or around May 11, 2018, Defendant initiated a confessed judgment action against Plaintiffs in the Circuit Court for Howard County after Plaintiffs failed to return the Tiber Woods deposit. ECF No. 28 at 10, ¶ 54.

## PROCEDURAL BACKGROUND

The original complaint was filed in the Circuit Court for Howard County, and removed by Defendant on July 5, 2018. ECF No. 1.[3] On November 7, 2018, Plaintiffs amended the complaint.

---

[3] On August 16, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of all parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 16.

5

ECF No. 28. On November 27, 2018, Defendant filed the Motion to Dismiss. ECF No. 31. Plaintiffs filed an opposition on December 11, 2018, ECF No. 35, and Defendant replied on December 26, 2018, ECF No. 39. This matter is now fully briefed, and the Court has reviewed Defendant's Motion to Dismiss, as well as the responses thereto. For the following reasons, Defendant's Motion to Dismiss is GRANTED.

## DISCUSSION

### A. Standard of Review for Motion to Dismiss for Failure to State a Claim

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As stated in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

**B. Defendant's Motion to Dismiss for Failure to State a Claim**

In Counts I and II, Plaintiffs allege that Defendant breached the Agreement by defaulting on several matters, including failing to close on the Tiber Woods project, and failing to cure the defaults thereafter. ECF No. 28 at 11–15, ¶¶ 63–88. Plaintiffs seek a declaration that, because Defendant breached, they are entitled to retain the Tiber Woods deposit in the amount of $887,500, and that Defendant must release the deposit security mortgage, promissory note, and personal guaranty executed for the Tiber Woods project. *Id.* In Count III, Plaintiffs allege that they "have no adequate remedy at law" and seek a mandatory injunction ordering Defendant to release the deposit security mortgage, the promissory note, and the personal guaranty relating to the Tiber Woods project and dismiss the foreclosure case filed in the Circuit Court for Howard County. *Id.* at 15–17, ¶¶ 89–97. In Count IV, Plaintiffs allege that Defendant breached the contract by failing to act in good faith and fair dealing when it took action to prevent Plaintiffs from retaining the deposit, including filing an action for confessed judgment. *Id.* at 17–19, ¶¶ 98–110.

1. Defendant's Exhibits Are Integral To The Complaint.

Preliminarily, the parties disagree on whether exhibits accompanying Defendant's Motion to Dismiss are integral to Plaintiffs' Complaint and whether the Court is permitted to consider them without converting Defendant's Motion to a motion for summary judgment. In its Motion, Defendant has attached the promissory note and personal guaranty executed by Mr. Roberts relating to the Tiber Woods project. ECF Nos. 31-2, 31-3. Defendant has also attached two letters sent to Plaintiffs. The first letter, dated February 21, 2018, informed Plaintiffs that the February 2, 2018 closing notice was deficient. ECF No. 31-4. The second letter, dated April 13, 2018, informed Plaintiffs that the Agreement had been terminated due to Plaintiffs' repudiation. ECF No. 40-1. Most importantly, Defendant has included the March 29, 2018 termination notice from

7

Mr. Roberts, which was omitted from Plaintiffs' Complaint. ECF No. 31-5. Plaintiffs argue that the March 29th termination notice is not integral to the Complaint, but that if the notice is properly before the Court at the motion to dismiss stage, the cover email that accompanied the notice must also be considered.[4] ECF No. 35 at 5–6.

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). "[A]s a general rule[,] extrinsic evidence should not be considered at the 12(b)(6) stage." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). However, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'" *Id.* (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "To be 'integral,' a document must be one 'that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Murphy-Taylor v. Hofmann*, 968 F.Supp.2d 693, 711 (D.Md. 2013) (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D.Md. 2011)) (emphasis in original) (internal quotation marks omitted).

Plaintiffs do not contest that the promissory note, personal guaranty, and letters are integral to the Complaint. Because Plaintiffs specifically referenced these documents in the Complaint, *see* ECF No. 28 at 3–7, 8–9, ¶¶ 15, 19, 24–25, 32–34, 41–42, 50, and their authenticity has not

---

[4] The email's subject line is titled "Tiber Woods Termination" and states in relevant part: "Since you all have provided no response, no communication and no guidance to any of the issues on the Closing Notice for Tiber Woods or the Default Notice, I am proceeding with the Termination of the Agreement as it relates to Tiber Woods." ECF No. 35-1 at 2.

8

been questioned, the Court will consider them in conjunction with the Motion to Dismiss. Despite Plaintiffs' objection, the Court will also consider the March 29th termination notice because it was relied upon in the Complaint, *see id.* at 8–9, ¶¶ 45–50, and its authenticity has not been challenged. Furthermore, the notice implicates the legal rights asserted by Plaintiffs as it is crucial in determining whether Mr. Roberts repudiated the Agreement and, therefore, whether Plaintiffs can even assert the claims raised. In considering the notice, the Court will also consider the cover email that accompanied the notice. *See* ECF No. 35-1.

"It is well settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, allowing them to assess whether genuine issues of material fact do exist." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). A "judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Sager v. Housing Comm'n of Anne Arundel Cty.*, 855 F.Supp.2d 524, 542 (D.Md. 2012) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.)). Because the Court finds that the additional documents are integral to the Complaint, there is no basis for converting Defendant's Motion. However, even if the Court were to convert the Motion to one for summary judgment, the Motion would be granted for the same reasons discussed below.

2. <u>Declaratory Judgment (Counts I and II)</u>

Plaintiffs seek a declaratory judgment under both Maryland and federal law, essentially asking the Court to declare that Defendant breached the Agreement. "Under Maryland law, to establish a breach of contract, there must be a contractual obligation owed by the defendant to the

9

plaintiff and a material breach of that obligation." *J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.3d 593, 600 (D.Md. 2015) (citing *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010)). Plaintiffs contend that Defendant defaulted on the Agreement in several ways, including by failing to close after receiving the February 2, 2018 closing notice, and failed to cure the defaults in a timely manner. ECF No. 28 at 11–15, ¶¶ 63–88. Defendant argues that it did not breach the Agreement because Plaintiffs repudiated the Agreement prior to the end of the cure period and the closing date. ECF No. 31-1 at 10–18. In order to evaluate Plaintiffs' allegations, the Court necessarily turns to the language of the contract between the parties, the "Agreement of Purchase and Sale." ECF No. 32-1.

In Maryland, when interpreting a contract, courts "seek to ascertain and effectuate the intention of the contracting parties." *Phoenix Servs. Ltd. P'ship v. Johns Hopkins Hosp.*, 167 Md.App. 327, 391 (2006). In ascertaining the parties' intent, Maryland adheres to the objective theory of contract interpretation. *See Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51 (2013). The objective theory of contract interpretation requires that a court

> must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

*Myers v. Kayhoe*, 391 Md. 188, 198 (2006) (quoting *Dennis v. Fire & Police Emps.' Ret. Sys.*, 390 Md. 639, 656–57 (2006)).

10

The process for determining the intent of the contracting parties is well established in Maryland. First, a court must ascertain whether the agreement is ambiguous. Language in a contract "may be ambiguous if it is 'general' and may suggest two meanings to a reasonably prudent layperson." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 389 (1985). However, this Court has acknowledged that a contract is not ambiguous merely because the parties disagree as to its meaning. *See Fultz v. Shaffer*, 111 Md.App. 278, 299 (1996). Contracts are interpreted as a whole, and all disputed terms are to be interpreted in context. *See Phoenix Servs.*, 167 Md.App. at 392–93. A court's next step depends on whether it finds that the contract is ambiguous or unambiguous.

If it finds that a contract is unambiguous, then it must only look to the language of the contract to determine the intent of the parties. *See id.* at 392. A court must presume that the terms expressed in the agreement are what the parties intended, regardless of what the parties may have meant, but did not state in the contract. *Id.* When contract language is clear and unambiguous, there is no room for construction and courts may not consider what the parties thought the agreement meant. *See Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985); *see also Phoenix Servs.*, 167 Md.App. at 392. If, on the other hand, a court finds that the contract is ambiguous, it must follow the second alternative, which is considering parol and/or extrinsic evidence to determine the parties' intent when the contract was made. *Phoenix Servs.*, 167 Md.App. at 393. At issue here are the parties' respective interpretations of section 11(c), relating to cure.

The Agreement of Purchase and Sale is set forth in ECF No. 32-1. The Court does not find that there is any ambiguity in the language, therefore the Court looks to the language of the contract

11

to determine the intent of the parties. *Phoenix Servs.*, 167 Md.App. at 392. The pertinent parts of the Agreement are set forth below.

> **5. Closings.**
>
> a. Each Closing shall take place within thirty (30) days after [Plaintiffs'] delivery of a written closing notice . . . to [Defendant] that all of the conditions precedent to Closing . . . have been satisfied . . . .
>
> . . . .
>
> **11. Default.**
>
> c. **Cure Period.** Notwithstanding the provisions of Subsections 11(a) and (b) above, except for a failure to timely deliver any portion of the Deposit as and when due, or to timely Close hereunder, for which the cure period shall be ten (10) business days, no default by either Party shall result in a termination or limitation of any rights of such Party hereunder unless and until the other Party shall have notified the defaulting party in writing of said default, and the defaulting party shall have failed to cure said default within thirty (30) days after the receipt of said written notice.

ECF No. 32-1 at 12, 23 (emphasis in original).

Section 5(a) of the Agreement unambiguously states that closings are to occur within thirty days of a valid closing notice. *Id.* at 12. Section 11(c) unambiguously creates a distinction between defaults relating to delivery of the deposit and closing, and other types of defaults. This section states that any default *other than* failure to timely deliver a portion of the deposit when due or failure to timely close requires the non-defaulting party to provide written notice to the defaulting party and the opportunity to cure within a thirty-day period. *Id.* at 23. However, defaults related to failure to timely deliver a portion of the deposit when due or failure to timely close are plainly excepted. *Id.* In those instances, the Agreement provides for a cure period of ten days and there is no requirement for the non-defaulting party to provide written notice. *Id.*

12

As noted, Plaintiffs sent Defendant the first closing notice for the Tiber Woods project on February 2, 2018. ECF No. 1-7. However, Defendant found the notice to be deficient as not all conditions precedent to Closing had been satisfied at that time. ECF No. 31-4. Specifically, in its response, dated February 21, 2018, Defendant pointed out that the closing notice's reference to the number and type of lots was inaccurate, there was a question as to a billboard located on the property, and the appeal period mandated by Howard County with respect to the record plat had not yet expired. *Id.* at 2–3. Thus, contrary to Plaintiffs' assertions, this premature closing notice did not trigger a closing date within thirty days and Defendant did not breach the Agreement by failing to timely close after this notice.

On March 5, 2018, Plaintiffs delivered another closing notice for the Tiber Woods project, ECF No. 1-8, and closing was therefore required to be held by April 4, 2018, ECF No. 32-1 at 12. Plaintiffs later sent Defendant two default notices: one dated March 21, 2018, and another dated March 22, 2018. ECF Nos. 1-9, 1-10. Neither of these notices alleged any default relating to failure to deliver the deposit or failure to close. *Id.* Thus, Defendant had thirty days to cure those alleged defaults. ECF No. 32-1 at 23. However, before Defendant could cure and before closing could occur, Mr. Roberts sent Defendant two termination notices via email. ECF Nos. 1-11, 31-5. The first notice, sent on March 29, 2018, stated in relevant part: "This is a Termination Notice for the Tiber Woods project in Howard County[,] Maryland. The Deposit will not be returned." ECF No. 31-5 at 2. The cover email that accompanied this notice also stated in relevant part: "Since you all have provided no response, no communication and no guidance to any of the issues on the Closing Notice for Tiber Woods or the Default Notice, I am proceeding with the Termination of the Agreement as it relates to Tiber Woods." ECF No. 35-1 at 2. The second

13

termination notice, sent on April 3, 2018 (one day before the required closing date), stated that Defendant was "in Default for failure to Close on the Tiber Woods project." ECF No. 1-11 at 2.

"Under Maryland law, 'ordinarily, in order to constitute anticipatory repudiation, there must be a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract.'" *J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, No. DKC 11-1948, 2014 WL 3865993, at *5 (D.Md. Aug. 5, 2014) (quoting *C.W. Blomquist & Co., Inc. v. Capital Area Realty Investors Corp.*, 270 Md. 486, 494 (1973)). Here, the notices and the cover email unequivocally stated that the Agreement as it related to the Tiber Woods project was terminated and that the Tiber Woods deposit would not be returned to Defendant. Thus, the notices effectively repudiated the Agreement and Defendant's remaining obligations to cure the alleged defaults and close on the Tiber Woods project were terminated. *Stefanowicz Corp. v. Harris*, 36 Md.App. 136, 149 (1977) ("[W]hether repudiation is treated as a breach or not, the injured party is not privileged to continued performance.").

Considering the terms of the contract, the evidence plainly shows that Plaintiffs, not Defendant, breached the Agreement by terminating before Defendant had the opportunity to cure and before the parties closed on the Tiber Woods project.[5] Per the Agreement, Defendant had thirty days from each of the default notices to cure the alleged defaults and had until April 4, 2018 to close on Tiber Woods after the closing notice. ECF No. 32-1 at 12, 23. Yet, Plaintiffs terminated the Agreement on March 29, 2018, a week after sending the default notices, ECF No. 31-5, and even affirmed the repudiation with a second termination notice on April 3, 2018, ECF

---

[5] Plaintiffs contend that they could not have committed breach as they had already fully performed under the Agreement. ECF No. 35 at 7–8. However, Plaintiffs overlook their own obligation to close on the Tiber Woods project. Under the Agreement, Plaintiffs agreed "to assign to [Defendant] all of [Plaintiffs'] right, title and interest in and to each Underlying Contract . . . at the Closing for the purchase of the Project." ECF No. 32-1 at 6.

14

No. 1-11. Contrary to Plaintiffs' assertion, section 11(c) of the Agreement did not require Defendant to send Plaintiffs written notice of their failure to close. *See* ECF No. 32-1 at 23. In accordance with the plain terms of the Agreement, Defendant gave Plaintiffs ten days to cure the failure to close, and when the cure period expired on April 13, 2018, Defendant informed Plaintiffs in writing that the Agreement was terminated. ECF No. 40-1.

There being no ambiguity in the language of the contract, "there is no room for construction, and a court must presume that the parties meant what they expressed." *Gen. Motors Acceptance Corp.*, 303 Md. at 261. On its face, Counts I and II of the Complaint fail to allege sufficient facts showing Defendant breached the contract to survive a motion to dismiss. A complaint cannot suffice "if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. Even accepting all the alleged facts as true, the Motion to Dismiss is GRANTED as to Counts I and II.

3. Mandatory Injunction (Count III)

In Count III, Plaintiffs again allege that Defendant breached the agreement. ECF No. 28 at 15–17, ¶¶ 89–97. Plaintiffs also contend that due to Defendant's breach, Plaintiffs are entitled to retain the Tiber Woods deposit and to the release of the deposit security mortgage, promissory note, and personal guaranty. *Id.* Plaintiffs seek a mandatory injunction requiring Defendant to release the various instruments and to dismiss the foreclosure action filed by Defendant in state court. *Id.*

"The authority of the . . . court . . . to issue a preliminary injunction, especially a mandatory one should be sparingly exercised. Mandatory preliminary injunctions do not preserve the status

15

quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) (citing *I.C.C. v. Balt. & Annapolis R. Co.*, 64 F.R.D. 337 (D.Md. 1974)). Here, Plaintiffs have failed to plead sufficient facts demonstrating that Defendant breached the Agreement. Rather, the evidence clearly shows that Plaintiffs breached the Agreement by repudiating the contract prior to closing. As such, injunctive relief is not warranted. For these reasons, the Motion to Dismiss is GRANTED as to Count III.

4. Breach of Contract (Count IV)

Lastly, in Count IV, Plaintiffs allege that Defendant breached the implied covenant of good faith and fair dealing by taking action to recover the Tiber Woods deposit. ECF No. 28 at 17–19, ¶¶ 98–110. Specifically, Plaintiffs contend that Defendant's filing of a confessed judgment action breached the covenant because Plaintiffs are entitled to retain the Tiber Woods deposit under the Agreement due to Defendant's default. *Id.* This Count fails for several reasons.

First, this Court has repeatedly acknowledged that Maryland does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing. *E.g.*, *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 794 (D.Md. 2002); *Baker v. Sun Co.*, 985 F.Supp. 609, 610 (D.Md. 1997). Plaintiffs have already asserted that Defendant breached the Agreement by failing to cure the alleged defaults in other counts; they cannot now bring a separate count alleging that Defendant breached the implied covenant of good faith and fair dealing.

Additionally, Plaintiffs have failed to allege sufficient facts to state a claim for breach of contract by breach of the implied covenant of good faith and fair dealing. "Under Maryland law, a duty of good faith and fair dealing . . . simply prohibits one party to a contract from acting in

16

such a manner as to prevent the other party from performing his obligations under the contract." *Parker v. Columbia Bank*, 91 Md.App. 346, 366 (1992). Plaintiffs have not alleged that Defendant interfered with Plaintiffs' performance of the Agreement in any way. Plaintiffs have only alleged that Defendant has interfered with the right to retain the Tiber Woods deposit due to Defendant's breach. ECF No. 28 at 17–19, ¶¶ 98–110. Moreover, the promissory note executed by Seller Plaintiffs and the personal guaranty executed by Mr. Roberts contained confessed judgment provisions in which Plaintiffs agreed to entry of a confessed judgment in the event that return of the deposit was not made on demand. ECF Nos. 31-2, 31-3. After notifying Plaintiffs of their default and termination of the Agreement, Defendant demanded return of the Tiber Woods deposit and all accrued interest. ECF No. 40-1 at 5. Defendant also reminded Mr. Roberts that he personally guaranteed the return of the deposit. *Id.* When Plaintiffs failed to return the deposit or pay any of the accrued interest, Defendant filed the action for confessed judgment, as was its right under the note and guaranty. Such action does not constitute breach of the implied covenant of good faith and fair dealing. Thus, the Court finds that based on the facts outlined in the Complaint, Plaintiffs have failed to state a plausible claim as to Count IV. Accordingly, the Motion to Dismiss is GRANTED as to Count IV.

## CONCLUSION

In conclusion, for the reasons stated herein, Defendant's Motion to Dismiss is GRANTED as to Counts I, II, III, and IV. Because no motions pertaining to Defendant's counterclaims have been filed, this decision does not affect those claims raised in the third-party complaint (ECF No. 32). A separate order will follow.

Date: 25 February 2019

A. David Copperthite
United States Magistrate Judge